**O**

# United States District Court
# Central District of California

| | |
|---|---|
| QUEST NUTRITION, LLC, a Delaware limited liability company,<br><br>      Plaintiff,<br><br>  v.<br><br>NUTRITION EXCELLENCE, INC., a Canadian corporation,<br><br>      Defendant. | Case № 2:18-cv-06976-ODW (E)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [12]** |

## I. INTRODUCTION

Plaintiff Quest Nutrition, LLC ("Plaintiff" or "Quest") brought this breach of contract action against Defendant Nutrition Excellence, Inc. ("Defendant" or "NEI") in the Superior Court of the State of California, Los Angeles County, and NEI then removed the action to this Court. (Compl., ECF No. 1-1; Notice of Removal, ECF No. 1.) NEI now moves to dismiss Quest's claims. (*See generally* Mot. to Dismiss ("Mot."), ECF No. 12.) For the reasons discussed below, the Court **DENIES** NEI's Motion to Dismiss.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Quest is a Delaware limited liability company headquartered in El Segundo, California that produces nutritional food products. (Decl. of Dave Fazio ("Fazio Decl.") ¶¶ 3–4, ECF No. 15-1.) NEI is a Canadian corporation headquartered in Burlington, Ontario, Canada that distributes nutritional performance products in Canada. (Decl. of Jeff Steinberg ("Steinberg Decl.") ¶ 3, ECF No. 12-1.) On or about April 14, 2011, Quest's Director of Worldwide Sales engaged NEI to distribute Quest Products throughout Canada. (*Id*. ¶¶ 6, 9, Ex. A, ¶ 4.) NEI was the exclusive Canadian distributor of Quest Products for approximately seven years pursuant to an oral distribution agreement (the "Distribution Agreement"). (*Id*. ¶¶ 7–8, Ex. A, ¶ 5.)

From May 2011 until December 2017, NEI submitted purchase orders to Quest, Quest prepared the ordered products for pick-up at one of its Los Angeles County warehouses, and NEI picked up the ordered products, either itself or through a freight company. (Fazio Decl. ¶¶ 7–8.) From January 2014 through November 2017, NEI entered California at least 150 times, either itself or through an agent, to pick up Quest products. (*Id*. ¶ 13.) The parties transacted approximately $34,258,990.54 in business during that period. (*Id*.) In December 2017, Quest opened a warehouse in Nashville, Tennessee and, from December 2017 through March 2018, NEI picked up products from the Nashville warehouse. (*Id*. ¶ 9.)

On or about March 21, 2018, Quest terminated the Distribution Agreement. (Steinberg Decl. ¶ 7.) NEI subsequently sued Quest in the Ontario Superior Court of Justice in Toronto, Canada. (*Id*. ¶ 9, Ex. A.) Quest appeared but has not countersued NEI in the Canadian action. (*Id*. ¶ 10, Ex. B; Fazio Decl. ¶ 14.) As of September 5, 2018, the Canadian action had progressed to discovery. (Steinberg Decl. ¶ 13.)

Quest claims that NEI defaulted on several purchase orders, one of which was submitted to and fulfilled at one of Quest's Los Angeles County warehouses (dated July 26, 2017, for $2,451.68) and the remainder of which were fulfilled at Quest's Nashville warehouse (dating from December 13, 2017, to March 15, 2018, totaling

$1,207,791.47).  (Fazio Decl. ¶¶ 8–9 (listing pickup locations); Compl. ¶ 13 (listing dates and amounts).)  On July 6, 2018, Quest filed a Complaint against NEI in the Superior Court of the State of California, Los Angeles County for (1) goods and services rendered and (2) breach of contract.  (*See generally* Compl.)  NEI removed the action to this Court.  (Notice of Removal.)  NEI now moves to dismiss Quest's claims based on lack of personal jurisdiction, improper venue, *forum non conveniens*, and the *Colorado River* doctrine.  (*See generally* Mot.)

### III. LEGAL STANDARD

#### A. PERSONAL JURISDICTION

Personal jurisdiction is a question of law, with the burden on the plaintiff to show that the Court has personal jurisdiction.  *See FDIC v. British-Am. Ins. Co.*, 828 F.2d 1439, 1440 (9th Cir. 1987).  The plaintiff need make "only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss."  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor."  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).

For a federal court sitting in diversity to exercise personal jurisdiction over a nonresident defendant, the plaintiff must show: (1) "that the state statute of the forum confers personal jurisdiction over the nonresident defendant" and (2) "that the exercise of jurisdiction accords with federal constitutional principles of due process."  *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986).  California permits the exercise of personal jurisdiction "on any basis not inconsistent with the Constitution . . . of the United States," making the state and federal limits coextensive.  Cal. Civ. Proc. Code § 410.10; *Data Disc*, 557 F.2d at 1286.  Thus, the question becomes whether the exercise of personal jurisdiction is compliant with due process.  *Haisten*, 784 F.2d at 1396.

B.  **IMPROPER VENUE**

Federal Rule of Civil Procedure 12(b)(3) provides that a complaint may be dismissed for "improper venue." When ruling on a motion to dismiss under Rule 12(b)(3), the Court need not accept the pleadings as true and may consider facts outside the pleadings. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Once a defendant raises an objection to venue, the plaintiff bears the burden of establishing that the selected venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). A plaintiff need only make a prima facie showing of proper venue to avoid the defendant's motion to dismiss. *Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000), *aff'd*, 246 F.3d 675 (9th Cir. 2000).

C.  **FORUM NON CONVENIENS**

The doctrine of *forum non conveniens* is a "drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)). *Forum non conveniens* is "an exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." *Dole Food*, 303 F.3d at 1118. Ordinarily, there is a "strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Carijano*, 643 F.3d at 1227; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) ("[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum.").

D.  **THE COLORADO RIVER DOCTRINE**

Under the *Colorado River* doctrine, "a federal court may stay an action when there is a first-filed, pending action in a foreign jurisdiction." *Superior Indus. Int'l, Inc. v. Macchine Utensili Speciali S.p.A.*, No. CV 09-08888 RGK (Ex), 2010 WL

11597860, at *3 (C.D. Cal. Apr. 29, 2010) (citing *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991)). In the Ninth Circuit, "district courts must stay, rather than dismiss, an action . . . under *Colorado River*." *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir. 1990); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) ("[W]hile we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.")

The *Colorado River* doctrine is applicable only in "exceptional circumstances" and is a "narrow exception to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see also Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005) (noting that the circumstances where this doctrine can be properly applied are "exceedingly rare").

In evaluating the applicability of the *Colorado River* doctrine, the Ninth Circuit determines, as a preliminary question, whether there is a "substantial doubt" that the parallel proceeding will "resolve all of the issues" in a plaintiff's petition. *Holder*, 305 F.3d at 868; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (finding that the parallel litigation must provide a "complete and prompt resolution," the district court must have "nothing further to do" and, "[i]f there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."). The Ninth Circuit considers a substantial doubt dispositive. *Holder*, 305 F.3d at 868.

### IV. DISCUSSION

NEI moves to dismiss Quest's Complaint on the bases of lack personal jurisdiction over NEI, improper venue, *forum non conveniens*, and the *Colorado River* doctrine.

## A. PERSONAL JURISDICTION

NEI first argues that the Court lacks personal jurisdiction. (Mot. 6–13.) For personal jurisdiction over an out-of-state defendant to comport with due process, "the defendant must have certain minimal contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Data Disc*, 557 F.2d at 1287 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). California courts may exercise jurisdiction over a nonresident defendant if it "has enough continuous contacts with California to subject [it] to the court's *general* jurisdiction or if the specific cause of action arises out of a defendant's more limited contacts with the state so that California may exercise *limited* or *specific* jurisdiction over [it]." *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).

Quest concedes general jurisdiction does not apply over NEI here but argues specific jurisdiction does. (*See* Opp'n. 5–14, ECF No. 15.) The question of personal jurisdiction, then, turns on whether NEI's relevant contacts with Quest enable this Court to exercise specific personal jurisdiction in this case.

If the defendant's contacts are "not so pervasive as to subject [it] to general jurisdiction," the Ninth Circuit applies a three-part specific jurisdiction test:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Data Disc*, 557 F.2d at 1287. The plaintiff bears the burden of making a prima facie showing of the first two prongs, but "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

*1. Purposeful Availment*

As to the first prong, the Ninth Circuit has typically analyzed cases that sound primarily in contract—as Quest's case does—under a "purposeful availment" standard. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). To have purposefully availed itself of the privilege of doing business in the forum, the defendant must "have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)).

In evaluating the "jurisdictional significance of a defendant's contract or other business in the forum," the Ninth Circuit applies a "practical and pragmatic" approach that is neither rigid nor formalistic. *Boschetto*, 539 F.3d at 1016; *see also Burger King*, 471 U.S. at 478–79. The Court also considers the origins of the contract at issue, as solicitation of business within the forum will likely amount to purposeful availment. *Sinatra*, 854 F.2d at 1195. While the formation of a contract with a nonresident defendant *alone* is insufficient to establish minimum contacts, purposeful availment occurs when such an agreement creates continuing relationships and obligations. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King*, 471 U.S. at 479) ("'[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' are the factors to be considered").

The Ninth Circuit has urged caution when exercising jurisdiction over foreign defendants; however, physical entry into, deliberate actions within, or continuing obligations to the forum are all relevant contacts which can subject foreign defendants to the jurisdiction of California district courts. *Pac. Atl. Trading Co. v. M/V. Main Express*, 758 F.2d 1325, 1330 (9th Cir. 1985) (advocating caution in exercising jurisdiction over foreign defendants for foreign acts with forum effects); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014) (holding that although "physical presence

in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.") (internal citation omitted); *Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1478 (9th Cir. 1986) ("The purposeful availment prong is satisfied when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents.").

NEI asserts that its contacts with California are "minimal at best" and that it has not purposefully availed itself of the privilege of doing business in California. (Mot. 9.) This is simply not the case when considering the entire course of dealing and continuing obligations between the parties. The declarations of both parties show an extensive, multi-year oral distribution agreement between NEI and Quest, involving numerous physical entries into California and millions of dollars transacted within the state, to which the purchase orders at issue are inextricably tied. (*See* Steinberg Decl. ¶¶ 7–8; Fazio Decl. ¶¶ 5, 12–13.)

NEI attempts to limit the focus to the isolated fact that the majority of purchase orders at issue were picked up in Tennessee, making them unrelated to California. (Mot. 3; Steinberg Decl. ¶ 15, Exs. C, D.) At the same time, NEI directs the Court to the long view of the business relationship, pointing to Quest's solicitation of the Distribution Agreement and the absence of a California choice of law clause. (*See* Def.'s Reply 7, ECF No. 16.) The Court declines to adopt NEI's selective views. The fact that Quest solicited the relationship and that NEI picked up most of the disputed orders in Tennessee are merely the bookends of a continuous seven-year business relationship. While the bookends alone may be insufficient to confer personal jurisdiction, the books themselves are more than enough to do so.

Throughout the Distribution Agreement, NEI entered California more than 150 times to pick up over $30 million in product. (Fazio Decl. ¶ 13.) Many of NEI's cited authorities involved isolated contracts where the only connection between the defendant and the forum was that the plaintiff happened to be a resident of the forum.

These cases are easily distinguished from the facts of this case, which involve multiple physical entries and substantial business transacted in the forum. *See Boschetto*, 539 F.3d at 1017 (finding no purposeful availment because defendant did not "create any ongoing obligations" or "continuing commitments" with its sole transaction with a forum resident); *Gray*, 913 F.2d at 759 (involving the sale of a single piece of equipment in Illinois); *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1249, 1255 (9th Cir. 1980) ("In none of the transactions, including the one in dispute, was California either the source or destination of the grain."). A party cannot say that it did not reasonably expect to be haled into court in California when it physically entered California on numerous occasions to transact business with a California company. *See Walden*, 571 U.S. at 285 ("[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.").

The Distribution Agreement here is not a "one-shot deal," but rather "envisioned continuing and wide-reaching contacts" with the forum and one of its residents. *Roth*, 942 F.2d at 622 (quoting *Burger King*, 471 U.S. at 480). The "economic reality" of forming a Distribution Agreement of this magnitude with a forum resident is an expectation of "continuing and extensive involvement with the forum." *Id*. In doing so, NEI "manifestly has availed [itself] of the privilege of conducting business" in California, and thus the purposeful availment prong is satisfied. *Burger King*, 471 U.S. at 476.

### 2. The Claims' Relation to Defendant's Forum Activities

The next requirement is that the claims at issue "arise[] out of or result[] from the defendant's forum-related activities." *Data Disc*, 557 F.2d at 1287. The Ninth Circuit utilizes a "but for" test to determine whether a particular claim arises out of forum-related activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Even a "single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Yahoo!*

*Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (internal quotation marks and alterations omitted).

In its own declaration, NEI acknowledged that "Quest's lawsuit against NEI is based upon the same business relationship and Distribution Agreement involved in the currently pending Canadian lawsuit." (Steinberg Decl. ¶ 14.) Thus, the purchase orders at issue here arise out of and are directly tied to the Distribution Agreement as well as the substantial contacts made with California during its performance. Accordingly, the relatedness requirement is met.

### 3. Reasonableness

As Quest has made a prima facie showing of the first two prongs, the burden shifts to NEI to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King*, 471 U.S. at 476–78). It is not enough that a defendant show that another forum is "more reasonable than California, it must show a due process violation; it must show that jurisdiction in California would make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.'" *Sher*, 911 F.2d at 1365 (quoting *Burger King*, 471 U.S. at 478). Courts in the Ninth Circuit evaluate seven factors in making this reasonableness determination:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 F.3d at 1114.

NEI has not set forth a compelling case that exercise of jurisdiction would be unreasonable in this case. **First**, although NEI picked up the disputed purchase orders primarily at the Tennessee facility, NEI also purposefully injected itself into

California repeatedly during the course of the underlying Distribution Agreement. **Second**, while litigation in California may be inherently burdensome on foreign corporations, "[m]odern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Id.* at 1115 (quoting *Sinatra*, 854 F.2d at 1199). **Third**, NEI's suit in Canada concerns the termination of the Distribution Agreement, while this action involves alleged default on specific purchase orders. Accordingly, there is no indication that litigation of this matter in California creates a conflict with the sovereignty of Canada.

**Fourth**, California "has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Since Quest's principal place of business is California, this factor favors Quest. *See Dole Food*, 303 F.3d at 1116; (Fazio Decl. ¶ 3.). **Fifth**, resolution of NEI's Canadian action would not resolve Quest's claims here, so adjudication by this Court on Quest's claims would not be duplicative or inefficient. **Sixth**, Quest has a substantial interest in seeking relief in California, which serves as its principal place of business and the home of its headquarters. (Fazio Decl. ¶ 3.) Further, the vast majority of Quest's evidence and witnesses are located in California. (*Id.*) Finally, the **seventh** factor favors NEI, as the Court finds unconvincing Quest's argument that Canada is an unsuitable alternative forum because it does not guarantee the right to a jury trial. *See Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (holding that the lack of jury trials does not render a forum inadequate).

However, NEI must do more than demonstrate that Canada is a reasonable alternative forum. *See Sher*, 911 F.2d at 1365. Weighing all the factors, the Court finds that NEI has failed to meet its burden to make a compelling case that litigation in California is "so gravely difficult and inconvenient" that its right to due process is violated by this action. *Burger King*, 471 U.S. at 478.

NEI purposefully availed itself of the privilege of doing business in the forum; Quest's claims are related to NEI's contacts with the forum; and NEI has failed to make a compelling case that the exercise of jurisdiction would be unreasonable. Accordingly, the Court **DENIES** NEI's motion to dismiss for lack of personal jurisdiction.

### B.  IMPROPER VENUE

NEI also moves to dismiss for improper venue.  (Mot. 13–14.)  "[W]hen an action is voluntarily removed from state court by [a] defendant[], as this case was, venue is automatically proper in the federal district court located where the state action was filed." *Prestar Fin. Corp. v. Infraegis, Inc.*, No. SACV 09-899 AG (RNBx), 2009 WL 3425348, at *1 (C.D. Cal. Oct. 19, 2009) (citing 28 U.S.C. § 1441(a) (providing that venue for an action removed from state court is proper in the district court "embracing the place where such action was pending"); *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953)).  NEI removed this action to the Central District of California, which is the federal district located where the state action was filed.  *See Maher v. Staub*, No. CV 09-8646 CAS (JCx), 2010 WL 325747, at *5 (C.D. Cal. Jan. 4, 2010) (finding that an action was "removed to the proper venue because the Central District of California is the district embracing the Los Angeles County Superior Court, the place where this action was pending").  Thus, venue is proper and the Court **DENIES** NEI's motion to dismiss for improper venue.

### C.  FORUM NON CONVENIENS

NEI next moves to dismiss on the basis of *forum non conveniens*.  (Mot. 14–16.)  "When a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient." *Carijano*, 643 F.3d at 1227; *see also Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990) (ruling that a domestic plaintiff's convenience is due "great deference" and will typically outweigh inconvenience to defendant).  To prevail on a motion to dismiss based upon *forum non conveniens*, the defendant bears the burden of showing: (1) an adequate alternative

forum exists, and (2) the balance of private and public interest factors favors dismissal. *See Dole Food*, 303 F.3d at 1118; *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1334–35 (9th Cir. 1984) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

### 1. Adequate Alternative Forum

An alternative forum is adequate if: "(1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano*, 643 F.3d at 1225. The remedy available in the alternative forum need not be equivalent to that in the original forum; however, it must not be "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper*, 454 U.S. at 254.

As NEI is a Canadian corporation, incorporated pursuant to the laws of the Province of Ontario with its registered office in Burlington, Ontario, NEI has established that it is "amenable to process" in Canada. (Steinberg Decl. ¶ 3.) Further, NEI has indicated a willingness to consent to the jurisdiction of Canadian courts as to Quest's claims, and the Court has the power to condition any dismissal for *forum non conveniens* on such consent by the defendant. *See Contact Lumber*, 918 F.2d at 1450. Finally, the remedies Quest seeks from this Court for breach of contract are not fundamentally different from those a Canadian court could order. *Etaliq, Inc. v. Cisco Sys., Inc.*, No. CV 11-3672 GAF (FFMx), 2011 WL 13220445, at *2 (C.D. Cal. July 20, 2011). Thus, Ontario, Canada is an adequate alternative forum.

### 2. Private Interest Factors

The balance of private and public factors must also favor dismissal. Private interest factors include:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Bos. Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206–07 (9th Cir. 2009) (quoting *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001)).

**First**, as a domestic company, Quest's decision to sue domestically is entitled to deference—that Quest brought its suit in its home jurisdiction entitles it to "even stronger" deference. *Carijano*, 643 F.3d at 1230; *Gates Learjet*, 743 F.2d at 1335 (quoting *Piper*, 454 U.S. at 255) ("The Supreme Court, however, has observed 'that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum.'"). **Second**, while traveling to California may be inconvenient for NEI, traveling to the alternative forum would be just as inconvenient for Quest. Thus, this factor is neutral. *Bos. Telecomms.*, 588 F.3d at 1208. **Third**, NEI has not pointed to any physical evidence that would be difficult to access in California. As this action involves a contractual dispute, most if not all physical evidence in this case will presumably be documents, and "[g]iven the ease of electronic transmission of documents, this factor should be given minimal weight." *Mayberry v. Int'l Bus. Machs. Corp.*, No. CV 09-1369 CW, 2009 WL 1814436, at *5 (N.D. Cal. June 25, 2009). **Fourth**, while NEI is not required to specifically identify potentially unavailable witnesses, NEI "has not shown, nor does it even represent, that any witness is unwilling to testify." *Carijano*, 643 F.3d at 1231 (citing with approval *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006) ("When no witness'[s] unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor.")).

**Fifth**, the cost of bringing witnesses to trial appears to be the same for each party, and, as neither party submitted evidence on the issue, this factor is neutral. *Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001). **Sixth**, while NEI contends that Quest "will need to enforce any judgment against NEI in Canada," it does not contend that a California judgment would be unenforceable overall. (Mot. 15.) Thus, the parties do not dispute whether any judgment in Canada or in this Court would be enforceable, making this factor neutral. *See Etaliq*, 2011 WL

13220445, at *5.  **Seventh**, NEI offers no additional practical considerations other than that Canada is an adequate alternative forum, which the Court addressed above.

### 3. Public Interest Factors

Public interest factors include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Bos. Telecomms.*, 588 F.3d at 1211 (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006)).

**First**, the local interest factor examines whether "the forum in which the lawsuit was filed has its own identifiable interest in the litigation which can justify proceeding." *Carijano*, 643 F.3d at 1232.  NEI argues that California has "little connection to the underlying dispute." (Mot. 16.) However, Quest alleges that NEI breached its contracts with Quest, "and California has an interest in protecting [companies] based in California." *Dole Food*, 303 F.3d at 1119.  **Second**, the Distribution Agreement is an oral agreement with no choice of law provision, making the application of Canadian and California law equally likely and this factor neutral. *See Lueck*, 236 F.3d at 1148 ("[T]he choice of law analysis is only determinative when the case involves a United States statute requiring venue in the United States . . . . Where no such law is implicated, the choice of law determination is given much less deference on a forum non conveniens inquiry." (citations omitted)).  **Third**, **Fourth**, and **Fifth**, as discussed above, the local interest in this controversy is strong, justifying the burden on local courts and juries, congestion, and related costs. *See Piper*, 454 U.S. at 261; *Lueck*, 236 F.3d at 1147.  Further, NEI submitted no evidence that the alternative forum is any less congested or would be less burdened by hearing this suit than this Court. *See Carijano*, 643 F.3d at 1233.

### 4. Weighing the Factors

As each of the private and public interest factors is either neutral or weighs against dismissal, NEI has failed to meet its "burden of making 'a clear showing of

facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience.'" *Bos. Telecomms.*, 588 F.3d at 1212 (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)).

While Ontario, Canada is an adequate alternative forum, the balance of public and private interest factors shows that the use of such an "exceptional tool" and "drastic exercise of the court's inherent power" is unwarranted here. *Carijano*, 643 F.3d at 1224 (internal quotation marks omitted). Accordingly, the Court **DENIES** NEI's motion to dismiss for *forum non conveniens*.

### D. THE *COLORADO RIVER* DOCTRINE

Finally, NEI moves to dismiss or stay pursuant to the *Colorado River* doctrine. (Mot. 17–20.) In accordance with Supreme Court and Ninth Circuit authority, as this action is one for damages, NEI's request to dismiss based on the *Colorado River* doctrine is **DENIED**. *See Quackenbush*, 517 U.S. at 731 ("[F]ederal courts have the power to dismiss . . . cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary."); *Coopers & Lybrand*, 912 F.2d at 1138 ("[D]istrict courts must stay, rather than dismiss, an action . . . under *Colorado River*.").

As to NEI's revised request to stay the immediate action, the Court must make a preliminary, dispositive determination whether there is a "substantial doubt" that the parallel proceeding will "resolve all of the issues" in Quest's petition. *Holder*, 305 F.3d at 868. While the proceedings need not have "exact parallelism," they must be "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Only where a court finds no substantial doubt that the parallel proceeding will resolve all issues does the court then evaluate a non-exclusive, complex set of factors. *Holder*, 305 F.3d at 870.

NEI claims that "Quest placed the subject of this California action at issue in the Canadian Action" by "affirmatively pleading that NEI had defaulted on approximately $900,000 of invoices." (Mot. 17 (internal quotation marks omitted).)

While it is true that Quest discussed the default at issue in its *Statement of Defence* filed in the Canadian action, Quest never countersued NEI in Canada for any amount. Further, the Canadian action will resolve whether Quest failed to provide reasonable notice of termination of the Distribution Agreement, while the action before this Court will address NEI's alleged failure to pay for goods and services rendered. Factual determinations in the Canadian action will likely be relevant to facts in this case, such as the obligations created by the Distribution Agreement; however, the Canadian action will not resolve the claims brought by Quest here. *See Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1158 (C.D. Cal. 2005). Thus, the Court lacks "full confidence" that the Canadian proceeding will end this litigation. *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). Accordingly, the Court may not enter a *Colorado River* stay order.

The task of this Court under the *Colorado River* doctrine "is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990) (quoting *Moses H. Cone*, 460 U.S. at 25–26). As the Canadian action is not substantially similar to and does not fully resolve Quest's claims before this Court, NEI has not established the "exceptional circumstances" required under *Colorado River*. Accordingly, the Court **DENIES** NEI's motion to dismiss under the *Colorado River* doctrine.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** NEI's Motion to Dismiss.

**IT IS SO ORDERED.**

April 23, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**